**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-4576

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVENSON GILBERTO HARRISON, JR.,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Senior District Judge.  (1:15-cr-00015-JPJ-PMS-1)

Submitted:  June 10, 2026                          Decided:  June 30, 2026

Before AGEE, HARRIS, and BENJAMIN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Mary E. Maguire, Federal Public Defender, Erin Trodden, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jennifer R. Bockhorst, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Stevenson Gilberto Harrison, Jr., was ordered to serve a five-year term of supervised release in the Western District of Virginia. To that end, the Bureau of Prisons (BOP) provided him with a bus ticket to Roanoke, Virginia, upon his release from prison. But Harrison wished to serve his term elsewhere, so he traveled instead to Little Rock, Arkansas. As a result, the district court revoked his supervised release and imposed a nine-month prison term, with another five-year supervision term to follow.

Harrison appeals, challenging only the substantive reasonableness of his new term of supervised release. We affirm.

"A district court has broad discretion when imposing a sentence upon revocation of supervised release." *United States v. Patterson*, 957 F.3d 426, 436 (4th Cir. 2020). "This Court will affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable." *Id.* Where, as here, the sentence does not exceed the statutory maximum, we "first examine whether the sentence was unreasonable at all, procedurally or substantively." *United States v. Amin*, 85 F.4th 727, 739 (4th Cir. 2023) (internal quotation marks omitted). "Only if we find the sentence unreasonable must we decide whether it is plainly so." *Id.* (internal quotation marks omitted).

"A revocation sentence is substantively reasonable if, in light of the totality of the circumstances, the court states an appropriate basis for concluding that the defendant should receive the sentence imposed." *United States v. Coston*, 964 F.3d 289, 297 (4th Cir. 2020) (internal quotation marks omitted). In selecting a revocation sentence, the "court must consider certain factors set forth in [18 U.S.C.] § 3553(a), including the nature

2

and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence, and the need to protect the public." *United States v. Doctor*, 958 F.3d 226, 239 (4th Cir. 2020); *see* 18 U.S.C. § 3583(e). Critically, "district courts have extremely broad discretion when determining the weight to be given each of the [relevant] § 3553(a) factors." *United States v. Nance*, 957 F.3d 204, 215 (4th Cir. 2020) (internal quotation marks omitted). A defendant's mere disagreement with the value or weight attributed to the relevant § 3553(a) factors "does not in itself demonstrate an abuse of the court's discretion." *United States v. Susi*, 674 F.3d 278, 290 (4th Cir. 2012).

Harrison's criminal case began in 2015, when he was convicted for failing to register as a sex offender. After completing a 60-month prison sentence, Harrison started serving a 10-year term of supervised release. He did well for a while, operating a landscaping business and living with his wife in a house in Missouri. But at some point, he and his wife separated, and he wound up living in his vehicle. Later, while at a federal courthouse, he threatened to kill a Deputy U.S. Marshal. As a result, Harrison's supervision was revoked, and in 2024 he was sentenced to 12 months and 1 day in prison, plus another 5 years of supervised release.

Harrison wanted to return to Missouri after finishing his prison sentence. But the probation office in the Western District of Missouri refused to supervise him, so the BOP resolved to send him to Virginia. However, Harrison "used to be very gang related" in Virginia, so he was reluctant to return. For these reasons, Harrison opted to travel to Arkansas, Missouri's neighbor to the south. Once there, he registered as a sex offender

3

and contacted the probation offices of both the Eastern District of Arkansas and the Western District of Virginia to advise them of his whereabouts.

Harrison was soon arrested. At the ensuing revocation hearing, Harrison's counsel asked for a time-served sentence and no more supervision. She urged that there would be "no positive return on further efforts" to supervise Harrison. And she noted that, by virtue of Harrison's obligation to register as a sex offender, he would always be subject to some level of governmental oversight.

The district court rejected Harrison's request, explaining that an additional term of supervised release was necessary to support his reentry into society. On appeal, Harrison contends that he did not need any help, as he already had a strong release plan for restarting his life in Missouri. This argument, however, ignores that his prior stint on supervised release ended very poorly, suggesting that he was not ready to be released without supervision. Harrison also insists that he is a responsible citizen, as evidenced by his actions—registering as a sex offender and notifying the probation offices—when he arrived in Arkansas. But the fact that Harrison subsequently alerted the authorities cannot cure his initial transgression of failing to travel to his authorized judicial district. For these reasons, we believe it was entirely appropriate for the court to conclude that Harrison would benefit from continued supervision.

The district court also found that forgoing an additional term of supervised release would not serve the interests of the public. In response, Harrison argues that there was no need to protect the public because the instant violations did not involve dangerous conduct. But the court was allowed to consider Harrison's history of violence, 18 U.S.C.

4

§ 3553(a)(1), which included threatening to kill a Deputy U.S. Marshal just one year earlier.  Thus, there was certainly a reasonable basis for the court's conclusion that the public would be disserved by releasing Harrison without supervision.  At bottom, we find that Harrison has not satisfied his high burden of showing that the court abused its discretion in weighing the relevant § 3553(a) factors.[*]

Accordingly, we affirm the district court's revocation sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[*] We pause to acknowledge a couple points that, though not relevant to our analysis, appear to have motivated Harrison's decision to abscond.  First, Harrison's probation officer testified that she attempted to have him placed in a halfway house.  But the BOP was slow to respond.  According to Harrison, he was without a case manager for three months due to turnover at the BOP.  By the time the BOP acted on the halfway house request, Harrison's remaining custodial sentence was too short to qualify for placement.

Second, the BOP almost mistakenly released Harrison to Charleston, West Virginia, because his case manager confused the Western District of Virginia with the Southern District of West Virginia.  Only after multiple attempts did Harrison's probation officer finally convince his case manager—at the eleventh hour—that the BOP had arranged to send him to the wrong state.

Against this backdrop, we understand why Harrison might have been frustrated with the BOP.  But the BOP's alleged shortcomings did not give Harrison license to dictate where his supervision would be served.  It was the district court that decided to impose a term of supervised release, and it was the district court's trust that Harrison breached by traveling to a judicial district in which he was not authorized to reside.  If Harrison wanted to transfer districts, he could have petitioned the court.  *See* 18 U.S.C. § 3605.  What he could not do was unilaterally transfer himself to another district.